**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THOMAS H. IBBISON, | ) | 3:22-CV-01163 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL QUIROS, *et al.*, | ) | |
| *Defendants*. | ) | March 18, 2026 |

**RULING AND ORDER ON DEFENDANT LEE'S MOTION FOR SUMMARY
JUDGMENT**

Sarala V. Nagala, United States District Judge.

Plaintiff Thomas H. Ibbison,[1] a sentenced inmate within the custody of the Connecticut

Department of Correction ("DOC"), commenced this action against several DOC employees and

medical staff: Defendants Allison Hill, Yvonne M. Marceau, Reynoso, Shayna Graham, Syed

Johar Naqvi, Kayla Lozada, Krystal Myers, Stadalnik and Samantha Lockery, and a private

contract nurse, Dawn Lee, alleging violations of his constitutional rights while he was a pretrial

detainee.  Plaintiff alleges that on November 12, 2019, a DOC officer forcibly handcuffed him and

yanked his arm during an escort, which exacerbated a preexisting shoulder injury and caused his

shoulder to become dislocated.  Plaintiff alleges that he did not receive timely and appropriate

medical treatment following this incident.

As relevant to this motion, Plaintiff's amended complaint alleges a Fourteenth Amendment

claim of deliberate indifference to Plaintiff's medical needs against Defendant Lee.  *See* ECF No.

20; *see also* Initial Review Order of Amended Complaint dated November 7, 2023, ECF No. 23.

---

[1] Plaintiff commenced this action as a *pro se* litigant and subsequently filed the amended complaint, the operative pleading in this matter, in a *pro se* capacity.  *See* Compl., ECF No. 1; Am. Compl., ECF No. 20.  During the course of discovery, the Court appointed Plaintiff's current *pro bono* counsel.  *See* Order, ECF No. 202.

Defendant Lee has moved for summary judgment on this claim, arguing that Plaintiff has failed to exhaust administrative remedies and that there is no evidence demonstrating that she acted with deliberate indifference to Plaintiff's medical needs. Plaintiff opposes this motion. For the reasons set forth herein, Defendant Lee's motion for summary judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

The following facts, drawn from the parties' Local Rule 56 statements, are undisputed except as otherwise noted.

### A. The Parties

Plaintiff Thomas Ibbison is an inmate at Corrigan Correctional Institution ("Corrigan") and was in DOC's custody during the time of the events giving rise to this lawsuit. Pl.'s Aff., ECF No. 233-1 ¶¶ 3–4. Defendant Lee is an Advanced Practice Registered Nurse who was contracted through her private employer to provide medical services and nursing care within DOC's correctional facilities, including the facility where Plaintiff resided during the relevant time period. Pl.'s L.R. Rule 56(a)2 St., ECF No. 232, ¶ 1.

### B. Plaintiff's Prior Shoulder Injuries

From approximately 2000 to 2005, Plaintiff suffered from a torn labrum in his right shoulder. ECF No. 232 ¶ 5. Although he was scheduled to undergo surgery for the torn labrum in 2009, he never received this surgery because he could not obtain leave from work. ECF No. 232 ¶ 6. In July of 2019, prior to his incarceration, Plaintiff sustained an A/C joint separation injury of the right shoulder after falling off a ladder. *See* Pl.'s Dep. Tr., ECF No. 215-3 at 5; ECF No. 232 ¶¶ 3, 28; ECF No. 233-1 ¶ 5. Plaintiff was seen by Norwich Orthopedic Group for the A/C joint separation of his right shoulder and was scheduled for an MRI on October 7, 2019, but he did not attend this appointment due to his intervening arrest. ECF No. 232 ¶ 3; ECF No. 233-1 ¶ 6.

C.  Plaintiff's Arrest and Initial Screening

Plaintiff was arrested on October 5, 2019.  ECF No. 232 ¶ 2.  On the same day as his arrest, Plaintiff underwent an initial screening with a medical provider, Defendant Lozada, which Plaintiff contends was "inadequate."  *Id.* ¶ 7; ECF No. 215-3 at 5.  Plaintiff states that during this screening, he informed Lozada about his shoulder injury, but she failed to document this information.  ECF No. 232 ¶ 8.  In their Rule 56 statements, the parties disagree as to whether Plaintiff testified that Lee had any involvement with this screening, *see id.*, but based on the Court's review of Plaintiff's deposition transcript, there is no such dispute.  Plaintiff's deposition transcript reflects that he testified that "Lee was not present" or otherwise involved with this screening.  ECF No. 215-3 at 5.

D.  The November 12, 2019, Incident

On November 12, 2019, Plaintiff experienced an alleged excessive force incident involving two DOC officers, for which an incident report was prepared.  ECF No. 232 ¶ 9.  The following additional facts concerning the incident are set forth in Plaintiff's affidavit.

Plaintiff alleges that he was transferred to the Restrictive Housing Unit ("RHU") by Defendant Stadalnik because "Pruno," a type of homemade alcohol, was found in his cell.  ECF No. 233-1 ¶ 8.  Stadalnik escorted Plaintiff from his cell to the Block D Sallyport.  *Id.* ¶ 9.  After arriving at the Sallyport, several correctional officers were waiting for Plaintiff, including Defendant Reynoso and non-party Cadet Wiggin.  *Id.* ¶ 10.  Plaintiff alleges that Reynoso grabbed him, yanked his right arm forcefully behind his back, and handcuffed him.  *Id.* ¶ 11.  Plaintiff allegedly immediately felt his right shoulder became dislocated during Reynoso's handcuffing.  *Id.* ¶ 12.  Plaintiff also allegedly heard Stadalnik instruct Reynoso to swap places with Wiggin and escort Plaintiff on his left side to the RHU, which Plaintiff contends confirms that he knew that Plaintiff's arm was harmed.  *Id.* ¶ 13.

3

E.  Lee's Medical Evaluation

Because Plaintiff was complaining of pain, he was then escorted by Reynoso (on his left side), Wiggin (on his right side) and Stadalnik to a medical evaluation for clearance to the RHU, which was performed by Lee.  *Id.* ¶¶ 14, 28; ECF No. 232 ¶ 16.  It is undisputed that Lee's evaluation of Plaintiff was brief and that this was Lee's sole interaction with Plaintiff.  ECF No. 232 ¶ 12.  The purpose of Lee's interaction with Plaintiff was to conduct a medical evaluation to determine if he could be cleared for transfer from the general population to the RHU.  Lee Aff., ECF No. 215-7, ¶ 11.  During the evaluation, Plaintiff made complaints of right shoulder dislocation, joint and shoulder pain, and decreased range of motion.  ECF No. 232 ¶ 29.  Lee performed a physical examination of Plaintiff, but the assessment was limited because Plaintiff was in handcuffs.  *Id.* ¶ 22.  Lee gave Plaintiff Ibuprofen, instructed him to lay down, and placed an order for X-rays of Plaintiff's shoulder that same day.  *Id.* ¶¶ 23, 40.

Lee maintains that based on her education, training and understanding of DOC's policies, her assessment, treatment and medical orders were compliant with applicable prison health policies and consistent with advanced nursing standards, given Plaintiff's reported symptoms and the physical examination findings.  *Id.* ¶ 24.  Plaintiff, in turn, contends that the examination was inadequate.  *Id.* ¶¶ 25, 26.  Specifically, Plaintiff contends that Lee failed to provide timely and appropriate medical treatment, delayed follow-up diagnostic imaging, failed to relocate Plaintiff's shoulder joint or arrange for another medical professional to do so, and failed to complete the referral process so that Plaintiff could be seen by an orthopedic specialist.  ECF No. 233-1 ¶¶ 21–25.

Two days after Lee's assessment of Plaintiff, on or around November 14, 2019, Plaintiff underwent X-rays for his right shoulder.  ECF No. 232 ¶¶ 37, 41; *see also* X-ray Results and Report, ECF No. 215-6.  According to the X-ray results and report, which were signed by Lee on

4

November 15, 2019, the X-rays revealed "no abnormality of the scapula" and that the "glenohumeral joint appears remarkable." ECF No. 215-6 at 1. According to Lee, these findings indicate that Plaintiff's shoulder was neither dislocated nor constituted a medical emergency warranting further treatment. ECF No. 232 ¶¶ 43, 44. Additionally, the X-ray results and report documented that while there was some coracoclavicular and acromioclavicular (i.e., A/C joint) separation, no "sternal injury or neurovascular compromise" was suspected. ECF No. 215-6 at 1. The report also included an orthopedic specialist referral and notice to Plaintiff's primary provider. *Id.*

The parties dispute the findings of the X-rays, whether the results demonstrated that Plaintiff's medical needs were urgent, whether Lee herself informed Plaintiff of the results and when Plaintiff received the results of the X-rays. ECF No. 232 ¶¶ 38, 42, 43. Plaintiff states that Lee failed to follow-up with him and that he did not receive the results of the X-rays until "much later," though the date that Plaintiff claims to have received the results is unclear. *Id.*; *see also* ECF No. 215-3 at 8. Moreover, while Lee maintains that the X-rays did not show a dislocated shoulder, Plaintiff contends that his shoulder was in fact dislocated, and that during the interim period between Lee's examination and the X-rays, he repositioned his own shoulder back into place in his cell. ECF No. 232 ¶¶ 45, 46.

The record reflects that a consultation form for orthopedic specialist services was submitted for Plaintiff's shoulder. *See* Consultation Form, ECF No. 215-13. Although Lee avers that she submitted this form on November 15, 2019, Plaintiff contends that the form was generated by a separate provider on a different date, on June 5, 2020. ECF No. 232 ¶ 51. Based on the Court's review, and without opining on the parties' dispute regarding this issue, the form itself reflects

5

both Lee's summary of findings and recommendation for an orthopedic consultation, dated November 15, 2019, and a June 12, 2020, orthopedics appointment.  *See* ECF No. 215-13 at 1.

F.  Plaintiff's Subsequent Medical Treatment

On June 15, 2020, Plaintiff was seen by Augustus Mazzocca, M.D., an orthopedist at UConn Health Center, for his shoulder complaints.  ECF No. 232 ¶ 60.  Plaintiff alleges that Dr. Mazzocca ordered an MRI of Plaintiff's right shoulder, which occurred on June 25, 2020, and which revealed a diagnosis of a torn labrum.  ECF No. 231-1 ¶ 42.  On July 28, 2020, Plaintiff underwent an arthroscopic surgical procedure to repair the torn labrum in his right shoulder.  *Id.* ¶ 44.

G.  Plaintiff's Grievance History[2]

Plaintiff alleges that from November of 2019 through February of 2020, he submitted numerous grievances to address his concerns with Lee's medical care.  *See generally* ECF No. 233-1.

Plaintiff states that he filed Inmate Request Forms concerning Lee's purported inadequate medical care and his shoulder injury on November 23, 2019, November 30, 2019, and December 7, 2019.  *Id.* ¶¶ 28–30.  In the November 23, 2019, Inmate Request Form submitted to "Medical (Dr.)," Plaintiff noted that he was unable to properly show Lee his injury because he was handcuffed throughout the evaluation.  *Id.* ¶ 28; *see also* Inmate Request Form dated November 23, 2019, ECF No. 233-1 at 15.  Plaintiff also included a request to see an orthopedist on the form.

---

[2] The Court notes that, based on the parties' Rule 56 statements, Plaintiff's grievance history is unclear.  While Lee outlines Plaintiff's grievance history and provides copies of the grievances submitted—materials she represents were obtained in discovery by co-Defendants' counsel—Plaintiff does not endeavor to meaningfully respond to these assertions.  Instead of admitting or denying the allegations, Plaintiff largely asserts objections based on technical deficiencies, disputes the authenticity of the grievances, and refers to a separate set of grievances annexed to his opposition brief.  *See* ECF No. 232 at 30–37.  Lee, in turn, challenges the authenticity of the grievances annexed to Plaintiff's brief, arguing that they were never submitted because they are not timestamped or stamped as received. The Court addresses these arguments more fully below.

*Id.*  In the November 30, 2019, Inmate Request Form—also directed to "Medical (Doctor)," Plaintiff explained that his right shoulder kept dislocating and that he was experiencing constant pain; he also requested an MRI.  *See* Inmate Request Form, dated November 30, 2019, ECF No. 233-1 at 17.  Finally, in the December 7, 2019, Request Form, submitted to "Medical," Plaintiff explained that his torn labrum regularly slipped out of its socket, causing further pain.  *See* Inmate Request Form, dated December 7, 2019, ECF No. 233-1 at 19.  He also explained that he had trouble putting the joint back in its socket.  *Id.*

Additionally, Plaintiff alleges that he filed various Administrative Remedy Forms.  He states that by Administrative Remedy Form dated November 22, 2019, he detailed the November 12, 2019, incident involving Reynoso and expressed that he wanted to undergo an MRI and be seen by a doctor, though he does not mention Lee by name in this form.  ECF No. 233-1 ¶ 27; ECF No. 233-1 at 12.  Plaintiff filed another administrative remedy form on December 9, 2019, regarding Lee's alleged lack of medical care.  ECF No. 233-1 ¶ 31; ECF No. 233-1 at 21–22.  Therein, he explained that his shoulder was out of its socket, he was in substantial pain, and that it was within Lee's authority to reposition his shoulder, either by performing the procedure herself or seeking additional medical attention.  ECF No. 233-1 ¶ 31; ECF No. 233-1 at 22.

Following his submission of the Inmate Request and Administrative Remedy Forms, on January 6, 2020, Plaintiff alleges that he filed a Level 2/3 Inmate Grievance Appeal form, indicating that he never received a response to his Level 1 Grievances (*i.e.*, regarding the Administrative Remedy Forms filed on November 22, 2019, and December 9, 2019).  ECF No. 233-1 ¶ 32; ECF No. 233-1 at 25.  Plaintiff noted therein that he continued to experience substantial pain in his right shoulder that impacted his daily life.  ECF No. 233-1 ¶ 32; ECF No. 233-1 at 25.

Plaintiff alleges that he filed additional Level 2/3 Inmate Grievance Appeal forms on January 11, 2020, and January 12, 2020.  233-1 ¶¶ 33–34; ECF No. 233-1 at 27, 29.  One month later, on February 13, 2020, Plaintiff filed a Level 3 Inmate Grievance Appeal form, detailing the lack of response to his Level 1 and 2 Grievances.  ECF No. 233-1 ¶ 36; ECF No. 233-1 at 33.  Thereafter, on February 14, 2020, and February 18, 2020, Plaintiff filed additional Level 3 Inmate Grievance Appeal forms.  ECF No. 233-1 ¶¶ 37–38; ECF No. 233-1 at 35, 37.  In the February 18, 2020 Level 3 Inmate Grievance Appeal Form, Plaintiff again detailed the extensive pain he experienced as a result of his shoulder injury.  233-1 ¶ 38; ECF No. 233-1 at 37.

In Lee's reply brief, she disputes that many of these grievances were submitted, as they are not stamped as received and contain no response from any prison official.  Lee Reply Br., ECF No. 249 at 9; *see* ECF No. 233-1 at 12, 15, 21–23, 25, 27, 29, 33, 35, 37.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). "It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

III.    **DISCUSSION**

   A.  Sufficiency of Defendant's Rule 56 Statement

As a preliminary matter, the Court finds that although Lee's Rule 56 statement is flawed in certain respects, the Court will not deny her motion for summary judgment on that basis, and will consider portions of the statement in evaluating her motion.

Local Rule 56(a) requires a party moving for summary judgment to submit a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried, in separately numbered paragraphs, and requires that each numbered paragraph be supported by a specific citation to evidence in the record. *See* D. Conn. L. Civ. Rules 56(a)1 and 56(a)3. These statements serve to aid and inform the Court. *See Tyszka v. Edward McMahon Agency*, 188 F. Supp. 2d 186, 189 (D. Conn. 2001) (citing to predecessor of Local Rule 56(a)).

Here, Plaintiff argues that Lee's Rule 56(a)1 statement is flawed because it is overlength, fails to include citations to the record as to certain asserted facts, and relies on a party declaration that Plaintiff contends is inadmissible hearsay. The Court addresses each of these arguments in turn.

First, the Court rejects Plaintiff's arguments that Lee's motion should be denied because her Local Rule 56(a)1 statement exceeds the page limits set forth in the Local Rules. Local Rule 56(a)1 provides that statements pursuant to this rule "shall be no longer than twelve (12) double-spaced pages, absent leave of the Court granted for good cause shown." Here, Lee's Local Rule 56(a)1 statement exceeds the page limitations set forth in this rule by eight pages and Lee did not obtain leave of Court prior to filing it. Notwithstanding this deficiency, the Court will consider it. Unlike the cases cited in Plaintiff's brief, the Court is not persuaded that any party would suffer prejudice by the overlength statement, particularly where Plaintiff was granted leave to file an overlength responsive statement and Lee has not demonstrated a pattern of disregarding court orders in this case.[3] *Cf. Melillo v. Brais*, No. 3:17-CV-520 (VAB), 2018 WL 4017587, at \*3 (D. Conn. Aug. 22, 2018) (denying party's motion for summary judgment where party consistently filed motions in excess of the page limit throughout the case); *Perkins v. Teele*, No. 3:15-CV-

---

[3] The Court cautions counsel, however, to adhere to the requirements set forth in the Local Rules in the future.

01137 (JCH), 2018 WL 3541864, at *2 (D. Conn. July 23, 2018) (denying parties' motion for summary judgment based on procedural defects alone).

Additionally, the Court recognizes that Lee submitted an electronically signed party affidavit in support of her motion for summary judgment that was undated. *See* Lee Decl., ECF No. 215 at 7. Although the statute allowing for unsworn declarations provides example language that contains a date, *see* 28 U.S.C. § 1746, the fact that Lee's affidavit was undated does not affect its content. And contrary to Plaintiff's suggestion, the undated affidavit was submitted under penalty of perjury, so it is appropriately considered as an unsworn declaration under § 1746. *See* ECF No. 215-7 at 1 ("I, DAWN LEE, do declare under penalty of perjury that the following is true and correct and is based upon my personal knowledge and belief . . ."); *see Rattray v. City of N.Y.*, No. 17-CV-8560 (PGG) (KHP), 2022 WL 4236057, at *3 (S.D.N.Y. Sept. 14, 2022) (noting that unsworn declarations made under the penalty of perjury need not be notarized). In any event, Lee has provided a notarized and dated version of her affidavit with her reply brief, *see* ECF No. 249-3 at 10, and has explained that she could not provide the notarized and dated version with the summary judgment motion due to an unforeseen family emergency and subsequent death of a family member. Thus, the Court finds that any defect stemming from the earlier omission of the date has been cured, and will consider Lee's affidavit.

Finally, the Court agrees with Plaintiff that portions of Lee's Rule 56(a)1 statement fail to include any citations to the record and in places where there is a citation, there is no *specific* citation for a stated proposition. Lee claims that these errors "are reflective of the incredibly disorganized and procedurally improper service, submissions, and filings of Plaintiff's discovery and other documents [] while he was proceeding *pro se*, which were referenced and cited to the best of Defendant's ability under the confines of a tight summary judgment deadline which could not be

11

further extended." ECF No. 249 at 5. But Plaintiff's former *pro se* status and the fact that Lee encountered obstacles during discovery does not justify the failure to cite to the records that Lee herself submits for stated propositions. Courts have found that this failure alone may warrant denial of a party's motion. *See, e.g., Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (summary order) (affirming district court's denial of plaintiff's motion for summary judgment because plaintiff's Local Rule statement contained no record citations).

As the Court finds that Lee has not demonstrated good cause for the failure to comply with the Local Rules, the Court will not consider the statements in paragraphs 9, 9a, 9b, 47, 59, 60b, 73, 74, 75 and 78 of Lee's Rule 56(a)1 statement, as they do not contain any citations to the record. The Court will, however, consider the statements in paragraphs 11 and 77b. Although the statements in paragraph 77b do not attach or cite to the DOC's administrative grievance policy referenced, the Court will nevertheless consider it because the policy is publicly available and is relevant to the Court's analysis of the exhaustion of administrative remedies defense addressed by the parties. As to the statement in paragraph 11, concerning video evidence that purportedly show Plaintiff stating that his shoulder injury was not attributable to the November 12, 2019, incident, and which purportedly could not be provided with the motion under DOC policy, the Court does not find that the video is material to disposition of this motion.[4]

Additionally, although Plaintiff points to other instances where Lee included citations to the record, but failed to cite to *specific* pages, the Court will nonetheless consider those statements, as the Court was largely able to ascertain the information cited.[5] For example, Lee's exhibits are

---

[4] Additionally, at oral argument, Plaintiff's counsel represented that the video evidence is not strictly material to Lee's motion.

[5] Courts also have a strong interest in deciding cases on the merits and moving cases forward. If the Court proceeds as Plaintiff suggests—by striking or otherwise not considering numerous statements in Lee's Rule 56(a)1 statement—it will effectively be unable to adjudicate the motion and this case will be delayed.

annotated and highlighted, which aided the Court in finding the applicable information. That said, the Court does <u>not</u> condone this practice in lieu of compliance with the Local Rules, and the Court admonishes Lee's counsel to exercise greater attention to detail and to include precise citations in the future.

B. Exhaustion of Administrative Remedies

The parties have presented competing evidence as to whether Plaintiff properly exhausted his administrative remedies, giving rise to genuine disputes of material fact that the Court cannot decide on the present record. Specifically, there are questions regarding whether unsigned and unstamped grievances were submitted to the DOC, as required to properly exhaust. Plaintiff attests that they were, while Lee suggests they were not. Insofar as the grievances pertain to Lee, the question of whether they were properly submitted is material because if the Court finds that Plaintiff has not exhausted administrative remedies vis-à-vis Lee, then his claims against her would be barred. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (recognizing that the Prison Litigation Reform Act ("PLRA") requires proper exhaustion in "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). But in any event, as the Court determines below that Plaintiff's claims fail on the merits, it need not (and does not) resolve this issue in this ruling.[6]

---

[6] Under the PLRA, a plaintiff is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration, which can be decided through an evidentiary hearing if necessary. *Messa v. Goord,* 652 F.3d 305, 308–10 (2d Cir. 2011) ("Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute.").

13

C.  Deliberate Indifference to Medical Needs

The Court finds that Plaintiff has shown disputed issues of material fact concerning the objective prong of his deliberate indifference claim, but the evidence is insufficient to demonstrate that Lee acted with deliberate indifference to his medical needs.

Plaintiff appears to mount a deliberate indifference claim against Lee based on two theories: (i) an unreasonable delay in diagnosis and treatment; and (ii) inadequate pain management and failure to provide accommodations.  *See* Pl. Br., ECF No. 233 at 26–28.  As the Court explained in its prior orders in this case, Plaintiff's claims are cognizable under the Fourteenth Amendment, rather than the Eighth Amendment, because he was a pretrial detainee at the time of the events alleged in the amended complaint.  *Ibbison v. Quiros*, No. 3:22-CV-1163 (SVN), 2024 WL 4653075, at *4 (D. Conn. Nov. 1, 2024).  Thus, the Court analyzes Plaintiff's deliberate indifference claim under the Fourteenth Amendment framework.[7]

An inmate who brings a claim of deliberate indifference to serious medical needs under the Fourteenth Amendment must satisfy a two-prong test.  *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019).  First, the inmate must satisfy the objective prong—that is, his medical needs must be sufficiently serious.  *Id.*  A medical need is "serious" if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  The Second Circuit has identified several factors that are "highly relevant" to the determination of whether a medical condition is sufficiently serious, including the existence of "an injury that a reasonable doctor or

_____

[7] Somewhat inexplicably given the Court's initial review orders, both parties rely almost solely on Eighth Amendment case law instead of Fourteenth Amendment case law.  The analysis under these amendments differs because "pretrial detainees have not been convicted of a crime and thus may not be punished in any matter—neither cruelly and unusually nor otherwise." *See Darnell v. Pinerio*, 849 F.3d 17, 29 (2d Cir. 2017) (cleaned up; citations omitted).  The Court utilizes Fourteenth Amendment precedent, but also cites to Eighth Amendment law where appropriate.

14

patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702–03 (internal citation omitted).

The standard for cases alleging a *delay* or interruption of treatment is slightly different, as the "seriousness inquiry is narrower." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds as recognized by Tripathy v. McKoy*, 103 F.4th 106 (2d Cir. 2024). Where a plaintiff alleges delay or interruption in treatment rather than failure to receive treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003). It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes." *Id.* (citing *Chance,* 143 F.3d at 702–03). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison [officials or] guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). As the U.S. Supreme Court has observed, claims that a medical provider has been negligent in diagnosing a medical condition or other medical malpractice do "not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

Second, the inmate must satisfy the "*mens rea*" prong—also sometimes referred to as the "subjective" prong. *See Charles*, 925 F.3d at 86–87; *Darnell*, 849 F.3d at 33–35. The plaintiff must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an

15

excessive risk to health or safety." *Darnell,* 849 F.3d at 35. Thus, in Fourteenth Amendment cases, the "*mens rea*" or "subjective prong" is "defined objectively." *Id.* Allegations of mere negligence or medical malpractice are insufficient; rather, a prisoner must show that the defendant acted with the equivalent of a culpable reckless state of mind with respect to the prisoner's medical needs. *Charles*, 925 F.3d at 87; *Darnell*, 849 F.3d at 36; s*ee also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Additionally, disagreement over the proper course of treatment generally does not create a constitutional claim. *Chance*, 143 F.3d at 703.

### 1. Objective Element

As to the objective element of the deliberate indifference test, the Court finds that there is a genuine dispute of fact regarding whether Plaintiff's shoulder injury, and the alleged delay in treatment, constituted a sufficiently serious medical need. Plaintiff states, and the evidence supports, that he experienced severe shoulder pain, due both to the November 12, 2019, incident and the subsequent delay in medical treatment. The record supports that these symptoms led to diagnostic imaging, medication, referral to an orthopedic specialist and eventual surgery. Contrary to Lee's arguments, which vehemently deny that Plaintiff's injury was serious, these considerations are sufficient to raise issues of fact as to whether Plaintiff's shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberative indifference standard. *See Raynor v. Feder,* No. 3:20-CV-1343 (SVN), 2023 WL 6295647, at *6 (D. Conn. Sept. 27, 2023) (finding that an inmate's severe shoulder pain, caused by a delay in treatment, raised a material issue of fact as to whether the inmate was deprived of a serious medical need); *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (same).

### 2. "Mens Rea" Element

With respect to the *mens rea* element of Plaintiff's claim, however, the Court finds that there is insufficient evidence to establish that Lee acted with deliberate indifference to Plaintiff's

16

medical needs.  As discussed above, to satisfy this element, Plaintiff must adduce evidence that Lee knew of or should have known of—and disregarded—an excessive risk to his health and safety.  *See Darnell*, 849 F.3d at 35.  The record does not support such a finding.

First, it is undisputed that Lee examined Plaintiff and he received medical treatment for his shoulder from her during their one short encounter.  Lee examined Plaintiff (albeit briefly), ordered X-rays that were taken two days later, and prescribed Ibuprofen for the pain Plaintiff reported.  Upon review of the X-rays, Lee determined, based on her medical expertise, that there was "no abnormality of the scapula" and that the "glenohumeral joint appear[ed] remarkable"—indicating that Plaintiff's shoulder was *not* dislocated.  ECF No. 215-6 at 1; ECF No. 232 ¶¶ 43–44.  Although Plaintiff contends that he was misdiagnosed, he proffers no expert testimony for this assertion and, indeed, acknowledges that the X-ray results showing no shoulder dislocation were correct because he apparently managed to put his shoulder back into place himself before the X-rays were taken.  ECF No. 232 ¶ 46.  At best, his arguments amount to a mere disagreement over a course of treatment, which is insufficient to establish deliberate indifference.

The fact that Plaintiff was later diagnosed with a torn labrum requiring surgery is of no moment.  Even assuming *arguendo* that Lee's initial diagnosis was incorrect, a misdiagnosis amounting to mere negligence is not enough to prove a constitutional violation without an accompanying showing that Lee acted at least recklessly.  *See Darnell*, 849 F.3d at 35 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence."); *Sanders v. Laplante*, No. 3:19-CV-1151 (CSH), 2019 WL 5538118, at *3–4 (D. Conn. Oct. 25, 2019); *Figueroa v. Cnty. of Rockland*, No. 16-CV-6519 (NSR), 2018 WL 3315735, at *6 (S.D.N.Y. July 5, 2018) ("At worst, [the defendant's] conduct amounted to an erroneous calculation of the risks facing Plaintiff, insufficient to demonstrate an intentional deprivation or

17

recklessness."); *see also Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (in Eighth Amendment context, "the mere malpractice of medicine," including "a delay in treatment based on a bad diagnosis," or "a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial" is not deliberate indifference); *Barnes v. Uzu*, No. 20-CV-5885 (KMK), 2022 WL 784036, at *13 (S.D.N.Y. Mar. 15, 2022) (in Eighth Amendment context, no constitutional violation where the doctor allegedly misdiagnosed the plaintiff by using an X-ray instead of an MRI and collecting similar cases); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (in Eighth Amendment context, missed/delayed diagnosis of hand fracture insufficient to state a deliberate indifference claim); *Estelle*, 429 U.S. at 106–07 (in Eighth Amendment context, negligence in diagnosing or treating a medical condition, including by failing to order an x-ray, not enough to state a valid constitutional claim).  And Plaintiff has proffered no evidence from which a reasonable jury could conclude that Lee acted recklessly during her brief encounter with him, as opposed to merely negligently.

Likewise, Plaintiff's argument that the Ibuprofen he was prescribed was an inadequate form of treatment also sounds in mere disagreement with Lee's medical judgment, which is not enough to prove a constitutional violation.  *See Ryan v. Cnty. of Nassau*, No. 12-CV-5343 (JS) (SIL), 2018 WL 354684, at *6 (E.D.N.Y. Jan. 10, 2018) (finding, after trial, that a physician's assessment, based on medical judgment, that immediate treatment was not necessary, did not meet the *mens rea* prong of a Fourteenth Amendment deliberate indifference claim); *see also Anderson v. Quiros*, No. 3:24-CV-00408 (SVN), 2025 WL 2734580, at *8 (D. Conn. Sept. 25, 2025) (decided under the Eighth Amendment); *Chance*, 143 F.4th at 703 ("mere disagreement over the proper treatment does not create a constitutional claim" provided that "the treatment given is adequate").  As courts in this circuit have observed in the Eighth Amendment context, "prison

18

officials and medical officers have wide discretion in treating prisoners" and federal courts are generally reluctant to question the medical judgment of practitioners or to constitutionalize claims which sound in negligence or medical malpractice. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).

With respect to Plaintiff's arguments that Lee acted with deliberate indifference by failing to reposition his shoulder during the examination and provide certain accommodations, such as a bottom bed bunk pass, the evidence does not support deliberate indifference, particularly where other forms of treatment were administered, as discussed above. *See Chance,* 143 F.3d at 703; *Sonds,* 151 F. Supp. 2d at 311 (disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim").   Indeed, Lee attests that manipulation of dislocated joints is beyond the scope of her authority and role as an ARPN, and is generally a procedure she would refer to a medical provider or orthopedic specialist.  ECF No. 215-7, ¶ 23.  Plaintiff offers no evidence to refute Lee's contention that performing a relocation of his shoulder would have been outside of her role.  Nor is there any indication in the record that Plaintiff requested that Lee prescribe him a bottom bunk pass or that the request was ignored.  Thus, Plaintiff's stated preferences for a different course of treatment or other accommodations do not demonstrate a constitutional violation.

Moreover, there is nothing in the record to suggest that Lee intentionally (or recklessly) delayed or interfered with Plaintiff's treatment.  To the contrary, the record demonstrates that Lee prescribed Plaintiff pain medication, entered a referral for an orthopedic specialist and ordered X-rays on November 12, 2019—the same day as her examination of Plaintiff—and the X-rays were conducted merely two days later, on November 14, 2019.  The Court cannot find that a two-day

delay is unreasonable under these circumstances, especially given that Plaintiff was prescribed other treatment and the X-ray ultimately did not reveal a dislocated shoulder. *See Chatin v. Artuz*, 28 F. App'x 9, 11 (2d Cir. 2001) (summary order) (finding two-day delay for X-rays was insufficient to rise to the level of deliberate indifference under the Eighth Amendment); *Benjamin v. Pillai*, 794 F. App'x 8, 12–13 (2d Cir. 2019) (summary order) (same for eight-week delay in taking X-rays). And although the parties dispute when the orthopedic referral was entered, the medical records themselves establish that the referral was made in November of 2019, shortly after Lee's examination. *See, e.g.,* ECF No. 215-12 at 1 (noting that a referral for an orthopedic consultation was submitted on November 15, 2019, but had not yet been scheduled); ECF No. 215-13 at 1 (citing a November 15, 2019, referral). Further, to the extent that Plaintiff predicates his deliberate indifference claim against Lee on the six-month delay to be seen by an orthopedic specialist, there is nothing in the record from which the Court can infer that Lee deliberately delayed care as a form of punishment or ignored a life-threatening or otherwise serious condition, especially given that she put in the request for referral soon after seeing him, and Plaintiff offers no evidence to dispute her attestation that she has no control over the "timeline or frequency by which inmates received care pursuant to orders and specialist referrals" she placed. ECF No. 215-7, ¶ 26; *see Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (noting that claims of deliberate indifference based on delays are reserved for exceptional circumstances and collecting cases). It is also undisputed that Lee treated Plaintiff on a single occasion and was not otherwise involved in his ongoing care for the shoulder injury, aside from assessing the X-ray results, over the ensuing months.

For these reasons, Plaintiff has failed to demonstrate a genuine dispute of fact regarding the *mens rea* prong of his deliberate indifference claim.  Accordingly, summary judgment in favor of Lee is appropriate.

### 3.  Proximate Cause

Defendants may be liable under Section 1983 if they "exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a *proximate cause* of plaintiff's deprivation of rights under the Constitution."  *Ortiz v. Goord*, 276 F. App'x 97, 98 (2d Cir. 2008) (summary order) (citing *Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134, 145 (2d Cir. 1981)).  Here, because Plaintiff has failed to raise a genuine dispute of material fact as to the *mens rea* element of his deliberate indifference claim against Lee, his deliberate indifference claim fails as a matter of law.  Thus, the Court need not reach the issue of proximate causation.

## IV.    CONCLUSION

For the reasons described herein, Defendant Lee's motion for summary judgment, ECF No. 215, is **GRANTED**.  The Clerk is directed to terminate Defendant Lee from this action.

**SO ORDERED** at Hartford, Connecticut, this 18th day of March, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

21